Good morning, your honors, Mr. Johnson. My name is Thomas Bothwell. I represent the appellant, Mr. McGee, in this appeal from the Social Security Administration's denial of his claim for Social Security disability benefits. We are appealing from the final decision of the agency, which is a decision of an administrative law judge who conducted a hearing in this case. We've assigned various errors to that administrative law judge's decision, and unless there are questions with respect to some of the issues, I intend to mainly focus upon two aspects of what we think were the assignments of error relative to that ALJ's decision. One is with respect to what we regard as the ALJ's failure to give, quote, great weight to the determination of the Veterans Administration that Mr. McGee was 100% disabled on account of post-traumatic stress disorder arising from what appears to be, from the record, a fairly substantial amount of military experience in Vietnam where he was exposed to heavy combat and experiences which wouldn't be too unusual for them to give rise to a diagnosis of post-traumatic stress disorder. There are hundreds of pages of records, medical records, in the record from the Veterans Administration. They are, the VA, as it were, is the main treating source in this case. It's my understanding Mr. McGee did not go to any other doctors for treatment other than to the Veterans Administration. All of those records, hundreds of pages from that source, are in the record. As you all know, back in 2002, the Ninth Circuit dealt with the issue and decided what kind of weight if any to give to Veterans Administration determinations, citing sister circuits, for example, the Sixth, which give different kinds of weight or deference to the Ninth Circuit. There are some circuits which say that they just give some weight to VA determinations. Some circuits say considerable weight. The Ninth Circuit, citing one or two other circuits that adopted a standard of giving great weight, adopted that standard for the Ninth Circuit. The administrative law judge below, I think it's a fair reading of his decision to say that he sort of dealt with that standard in passing, to put it mildly, he did not give great weight to that VA determination. Balled up in that VA determination, not only is the VA determination itself that he's 100% disabled from PTSD, but we think it's a fair reading of the records to say that rating comes from a variety of opinions from other doctors, treating doctors and doctors who personally examined Mr. McGee, who described him as permanently, totally disabled from his post-traumatic stress disorder. We cited different opinions from VA doctors in our brief, and we think that's from whence cometh, if you will, that 100% rating from the VA. The problem is your client was an alcoholic, right? He had a history, sir, and I guess some people say once an alcoholic, always an alcoholic, but that was certainly the problem for the ALJ judge. It's just going into this hearing, if I may, we had no clue that anyone thought that he was, that there was active drinking or substance use. As you know, there's kind of a system where these claims get handled, and the Social Security Administration, you apply, you get initially denied. If you don't like the decision, you appeal, you request reconsideration. If you get denied again, you request a hearing. At the initial determination, Your Honor, the Social Security said, we agree your alcoholism is in remission. In the reconsideration decision, the Social Security made the same determination. We agree your alcoholism is in remission. Going into the hearing, I think the only fair reading of the veteran's records is that they were determining that he was 100% disabled on account of the PTSD, and that the alcoholism was in remission. And then there are only three sources of medical evidence in this case. One is all those hundreds of pages of records from the VA. Another opinion is from a consultating doctor. I say consultating doctor. She never treated Mr. McGee, but at the request of Social Security prior to the hearing, she examined him. She determined... Dr. Schultz? Yes. She determined that his alcoholism was in remission. And then at the hearing, and this is the only other medical source of opinion in this case, there was an opinion from a Dr. Mabee. Dr. Mabee's name's a bit ironical considering he was retained by Social Security to basically just do a records review. He had never examined Mr. McGee, never treated him, but his job... And pardon me, Social Security judges often do this. They retain a doctor to do a records review and testify at the hearing. At the hearing, I think the only fair reading from the transcript is that Dr. Mabee regarded the alcoholism as in complete remission. And all his opinions were expressed based upon that stated premise. And at the hearing, the judge didn't ask Mr. McGee, are you still drinking? How much drinking's going on, if any? At the hearing, the judge didn't express to Dr. Mabee or anyone else his concerns that maybe this was still an active problem. So we go into this hearing thinking everyone agrees this is in remission. We go at the hearing, not a question about it comes up about whether there's still anything going on. And then the decision from the judge, who determines he's definitely disabled, unable to work, but then says, but you take the alcoholism off the table, and the judge determined that he was not disabled. That but for the alcoholism, he was not disabled. And where he got to that first determination, that he was disabled, we appreciate that he at least agreed that Mr. McGee was disabled, but where he got to there was by finding that his only, it's a term of art, his only severe impairments were depression, anxiety, and alcoholism. He didn't mention, didn't list PTSD as a severe impairment. In the end, does that make any difference? Yes, we certainly think it does. We appreciate that Mr. Johnson, for his client, has taken a different approach to that, saying he thinks that was harmless error, but we look at it this way. The PTSD, first of all, just on its face, there's a rejection there of the VA determination that he was disabled on account of PTSD. And to not include it in a list of severe impairments just is an improper rejection of the VA determination. That's true, but if the manifestation is reflected in the evaluation, and one of the things with so many of these psychological conditions, he does include depression, there are overlaps. Are there symptoms, are there effects that were left out of the administrative law judge's determination? Yes, sir. I mean, we think so, very much so. We think that, and we enumerated on pages 10 and 11 of our opening brief, a whole host, a whole laundry list, if you will, of symptoms, which are typically associated with bad, severe PTSD, but not with depression. Recurrent and intrusive distressing memories, recurrent and intrusive distressing dreams, acting or feeling as if different events are occurring, intense psychological distress from cues of the event, etc. There's 12 more of these symptoms that are listed on page 11 of our opening brief. They don't come from depression, they don't come from alcoholism, they don't come from, if I may, regular anxiety. And so it's sort of a, I shouldn't use this term, but I find myself garbaging garbage out. If you don't properly input a proper list of the severe impairments, then a problem is that your ultimate conclusion about whether he's disabled is fault. Let me ask you two questions. I'm looking at the magistrate judge's opinion, James Hutton. On page 11, he says that according to treatment providers at the VA dated August 25, 2006, Mr. McGee tested positive for marijuana. Is that true, or is there a rebuttal to that? That was during the seven weeks I gather he was in the opinion that he was 100% disabled. Yes, sir. And if I may, I'm sorry, I don't have that reference right in front of me, but I know there was one time where he did test positive, and then he said, no, that can't be. And he asked to be retested, and he was retested, and it came back negative. Now, whether that addresses that specific incident, I would still say this about that, Judge, and I hope I don't sound irresponsible or condoning anything here, but anecdotal, episodic, if you will, smoking marijuana once a year, once every six months, consuming alcohol in a very episodic way, we respectfully submit should not, with this record, should not support a finding that he was totally disabled, but if he would just stop drinking alcohol or smoking pot once every six months, he'd be able to work. And what about the other thing on page three of the magistrate judge's opinion? Mr. McGee testified he told the VA he would not take prescribed medication anymore. Your Honor, I know that there was that reference, but I also know that he was taking medication and a lot of it, and so there was no... You know that, you say, but is there any proof in the record? I thought it was in the record, a list of medications, but I'll also say this, Judge, no medical professional said if he would just take his medications, he would be okay, and this was not a basis of the judge's decision. There are other cases, for example, diabetes. If you don't take your insulin, you may be disabled, but if you would just take it, you wouldn't be, and so it can be a basis of a decision that you failed to follow prescribed medication. Nobody said this, but back to, if I may, your comment. My time is waning, but we've asked for reversal, for example, in McCarty, where there in McCarty, the veteran was determined to be 80% disabled by VA, and this was the first time that the court said, here's our standard, great weight. They just reversed and approved benefits, but noting that nobody, up until the time of the hearing and at the hearing, gave any clue at all, any indication at all, that they were concerned that this problem was not in remission, at the absolute least, your honors, we're asking for a remand, for a reevaluation, to determine, you know, was this guy just prolonged? And if we agreed with you, what do you think? Should we remand, or should we just grant benefits? What do you think would be appropriate here? We think that the evidence here is so unequivocal that a reversal is appropriate, but if you continue to harbor these concerns, that maybe if he had taken his medication, even though nobody said that, if he had taken his medication, he'd be able to work, remand it for some fact-finding. But to leave it at this, a complete denial of this claim, we respectfully submit, just totally flies in the face of the 100% great weight to the VA determination. Thank you. Thank you. Good morning, your honors. David Johnson for the Commissioner of Social Security. It's true, great weight to a Veterans Administration finding, unless specific, valid, and persuasive reasons are given by the ALJ for not giving it great weight. And that goes to the heart of who decides the issues in the case. It's the Administrative Law Judge. The role of this court, of course, is to decide, is there more than a scintilla of evidence supporting the Administrative Law Judge's judgment, and is it based on the correct legal standards? Well, my concern with this case is that I look at the Administrative Law Judge's decision, and I see he finds fault with medical opinions offered to support the evidence that supports his conclusions, such as his evaluation that but for the drug and alcohol abuse, the petitioner would be able to work, or the applicant would be able to work. Is there any affirmative evidence that you can point to that I've missed that supports the conclusion reached by the ALJ? I'd certainly start with Dr. Schultz's opinion. That is, her broad findings after testing, after examination, that he maintained the ability to reason, have good memory, concentration, he could maintain a pace, he could persist at tasks, he could finish the tasks. She also said he had to force social interaction, and he had troubles with adaptation. And she diagnosed PTSD, which the ALJ refused to find, and she came up with a GAF measure of 40. That sound like somebody who's going to be able to work full-time? Yes, it does. The reason is that the Global Assessment of Functioning doesn't focus on vocational factors, and because it can be limited to just the day of the exam versus the testing and examination, which is meant to get to who the person is and their general limitations in the big picture. The Global Assessment of Functioning has been recognized by the Commissioner as something that doesn't exactly directly translate into an assessment of functional, work-related limitations. Well, my worry is the ALJ reason that the GAF scores and the VA's disability rating, and now I quote, must indicate functioning when not sober, are persuasive or valid. When I read what we did here with the testing, it was my understanding the tests were taken after the treatment program, during a time when he couldn't drink, when he couldn't have drugs, and even checked him while sleeping. So I'm having trouble as to how the ALJ reached this reasoning when not sober. The Veterans Administration's disability rating, it's my understanding, is based on their view of him the entire time. The ALJ assessed that during the 21-day inpatient program when he was sober, he demonstrated abilities clearly in excess of the VA's disability rating. Well, the GAF scores of 32 to 40 are really the scores that are most in contention here, because 32 to 40 might give him some disability, and what the ALJ is saying is, well, that's not really something I have to rely on, because that indication is when he wasn't sober. But it seems to me that the tests were taken when he was sober, when he did have all of the things that he had to have. So, again, I'm questioning again, how do I give credence to what the ALJ says when the tests that were taken were not when he wasn't sober? The tests were taken when he was, after he got through a seven-week program. Now I have a GAF score. Schultz's determinations, again, suffer from the same problem. I'm sorry, Your Honor. When you talk about the test results, are you talking about Dr. Schultz's test results? Yes. Dr. Schultz was not a VA doctor, and it's accurate, I think, that her test results are valid to show that he had a number of abilities, and those, the forced social functioning and adaptation problems were accommodating the residual functional capacity finding. The only way to explain such low GAF scores, because they're inconsistent with his demonstrated abilities during the 21-day inpatient, the only way to explain them. Was it 21 days, or was it seven weeks? I thought it was seven weeks. It may be seven weeks. I'm confusing it with the fact that if one is in treatment for more than 21 days, that results in a 100% disability rating. The VA rating decision itself says that the decision of 100% was based on the inpatient and on the GAF scores. So this was more than double the minimum that time he was in treatment there, seven weeks. He went through extensive treatment. Okay. Absolutely, and he demonstrated extensive abilities during that time. So I understand correctly, you're discounting Dr. Schultz's GAF score because he may not have been sober at that time, and yet in the very same report, the ALJ is relying upon some of the specific narrative assessments she makes, which actually may be explained by the fact that he appears to perform better when he's not sober, because the PTSD takes over when he is. I have trouble understanding how, first, the ALJ can decide for himself based on this record when he was and when he was not sober, and, second, you've still got the problem, okay, if he's not sober then, what are you going to do when he gets  He may function particularly well with other people when, because of the PTSD, when he doesn't use alcohol. Certainly it's unclear as to when Mr. McKee was and was not sober. So the ALJ, what did he point to to say that must have been affected by his sobriety? The seven-week inpatient program where he demonstrated consistently the ability to participate, he became a leader of his group. He was constantly noted as engaging in the conversation, in the treatment, and there were no reports during that time of difficulty interacting with others. And, in fact, when the crisis of the false result on the marijuana test arose, he was complimented on how he handled it. He had no interpersonal difficulties handling it. Now, the residual functional capacity finding did not find that he could be a leader at a job. It found that if he were limited to perfunctory social interaction, set procedures, little need to interact with others, his boss or his coworkers, then he could maintain his job. So we're not saying that he could do exactly what he did in the treatment, but the ALJ had more than a scintilla of evidence for his finding that he could,  My understanding, though, is that the VA had multiple tests for his PTSD. Did they find him in the 89th percentile for immediate anxiety and 99th for trait anxiety? And that placed him in what they call range for hyperarousal symptoms for PTSD? I don't know those exact numbers, but I will take your Honor's word for it. He had anxiety. He had depression. And PTSD was diagnosed. And the functional assessment is what Social Security Disability focuses on. Once the case is not screened out at Step 2, it's a de minimis screening device. And once it's not screened out, then we have to consider all the functional assessments. And anxiety and depression certainly explain or describe his condition. PTSD may as well. And the fact that it wasn't specifically found at Step 2 has no bearing on the functional limitations. Counsel's reference to the symptoms of PTSD and your Honor's reference to the symptoms that Mr. McKee did experience, according to the record, doesn't tell us exactly which functional limitations he did and did not have. Right. But the VA determined he was 100% disabled, and we're supposed to give great weight to that. And the question is, did the ALJ comply with that legal standard here? You're supposed to give great weight unless there are specific, valid, persuasive reasons not to. Well, my worry is, as I understand it, there's a program's operations manual, which we have encountered previously, which suggests that when the evidence documents that after a drug-free period of one month, the other impairment is, by itself, not disabling, then the DAA is material. Now, in this particular situation, the VA made its determination of disability after more than two months of no alcohol consumption and after drug testing was negative for five weeks. It seems to me, then, why aren't we saying that after a month, if no other impairments are disabling, then drug and alcohol addictions are not to be considered in the evaluation? Why is that not the logical import of that manual, which is a part of what your service determines? One, because there's more evidence than was before the VA. Two, because the ALJ's assessment was more focused on the various pieces of evidence than the VA's broad 100%. Three, we do have different standards than the VA, functional limitations. Four, because the inverse of the POMS provision is not always true, and that's what's relied on. Five, because the POMS... Well, I guess I'm still having trouble. If the POMS provision is what it is and it means what it says, and we have a situation where the VA made its determination after more than two months of no alcohol consumption and after drug testing for five weeks was negative, I'm still having a tough time. Well, I'm looking at why, if I'm to give the VA some preeminent, if you will, responsibility in this, and I look at what you, in fact, have suggested in the Social Security Administration, the great weight, it doesn't seem, was accorded at all here. It was not, because specific valid and persuasive reasons were given. Well, okay. So if I don't agree with that, then you're dead. Well, if you're going to reevaluate the evidence for the ALJ, and that's not the role of this court. Well, if the ALJ has evidence to rely upon, I'm still struggling to find out what he's relying upon. He's guessing as to when the man is sober. He's picking and choosing amongst the medical reports. I am Dr. Schultz in the very same report when she gives a GAF of 40. Now, GAFs are evaluated differently by different people, but I have a hard time with the picking and choosing that seems to be going on. When nobody steps forward and offers medical evidence talking about his capacity to do things that he would need to do if he's going to have a full-time job. He did. During the seven-week inpatient program, he demonstrated capabilities that were far and above. And the people observing him concluded something to the contrary at the end. But it wasn't just based on the seven weeks for their conclusion. According to their statements, it was based on the length of treatment and the GAF score. And that's less than what the ALJ considers in determining his functional abilities at a job. They're saying just because he was sociable in these group therapy sessions that he must be able to function and hold a job. Is that sort of what the conclusion is? No. They're saying that he demonstrated abilities contrary to the VA's conclusion, contrary to his own claims, and consistent with Dr. Schultz's findings. And so he demonstrated the ability to engage in a job where no more than perfunctory social interaction is required. Where no more than limited work with or near others is required. So those limitations in the residual functional capacity finding have a basis in the evidence. Thank you for your time. Thank you. We have a little bit of time left for rebuttals. Thank you, Your Honor. I'm reminded of a comparison that I heard a psychologist make one time. He was indicating that there are certain situations, such as in treatment, where a person may be regarded as stable and doing okay. And Mr. Johnson has alluded to how Mr. Mickey demonstrated capabilities while in treatment that suggests maybe he wasn't disabled. And the psychologist made the comparison to an ice cube in the freezer. In the freezer, in a very controlled environment, you're stable. The ice cube is stable. And then when you take that ice cube out of the freezer, out of the controlled environment, put it wherever, it starts to melt or deteriorate or whatever. And I think that it's a fair reading of the Veterans Administration conclusions here to say he may have been stable and okay and be able to go to classes and demonstrate some kind of leadership or something in the treatment program, but they had all that information. And based upon all of that information and observing him in treatment, they still determined that he was disabled. And I think that that conclusion that they reached is well supported by the medical evidence, and the ALJ's decision is not. Thank you. Thank you. We thank both counsels for your arguments. The case just argued is submitted.
judges: Gilman (6th Cir.), Clifton, Nr Smith, Cjj